```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

PRINCE OF PEACE ENTERPRISES, INC.

                Plaintiff,

-against-

TOP QUALITY FOOD MARKET, LLC, A & C
SUPERMARKET, INC., FAVOR FOOD, INC.,
W.J. INC. a/k/a KAM CUI YAO CHOI HONG
and JOHN and JANE DOES, No. 1–50".

                Defendants.

----------------------------------------

07 Civ. 00349 (RJH)

**MEMORANDUM OPINION
AND ORDER**

      On January 16, 2007, plaintiff Prince of Peace Enterprises, Inc. ("Prince of Peace"), made *ex parte* application for a seizure of over-the-counter herbal supplements bearing the trademark PO CHAI PILLS. The Complaint states claims for: trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin and false descriptions or representations, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); federal trademark dilution, under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); dilution under Section 360-l of the New York General Business Law[1]; and common law unfair competition. The alleged "counterfeit goods" (Pl.'s Mot. for an Order to Show Cause ("Mot.") 11) were sold by defendants Top Quality Food Market, LLC ("Top Quality"), A & C Supermarket, Inc. ("A&C"), Favor Food, Inc. ("Favor Food"), and W.J. Inc. a/k/a Kam Cui Yao Choi Hong ("W.J. Inc."). In

---

[1] The Complaint states a claim under Section 368-d of the New York General Business Law; however, Section 360-l has replaced Section 368-d. *See Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 170 (2d Cir. 2000).

its application, plaintiff represented to the Court that the items to be seized were products that were unauthorized for sale in the United States and lacked labeling required by the U.S. Food and Drug Administration ("FDA") (Mot. 8, 14). On February 5, 2007, this court granted an *ex parte* order, and seizures were conducted on January 28, 2007.

On February 16, 2007, a hearing was held with regard to the propriety of such *ex parte* seizures and to ascertain whether the facts supporting the findings of facts and conclusions of law that gave rise to the original issuance of the seizure order were still valid. At the hearing, Top Quality argued that the Court lacks personal jurisdiction with respect to it. In addition, Top Quality, A&C, and Favor Food[2] argued that plaintiff lacks standing to bring claims for trademark infringement, trademark dilution, and counterfeiting because plaintiff is merely a licensee and not the owner or assignee of the trademarks in question. With respect to the merits of plaintiff's claims, the parties agreed that the seized goods were all manufactured by Li Chung Shing Tong (S) Pte Ltd. ("LCST"), the same manufacturer as the Po Chai Pills sold by plaintiff, and further that the pills seized at Top Quality, A&C, and Favor Food (but not W.J. Inc.) have the same ingredients and nearly the same packaging, including a "Supplement Facts" panel on the packaging as required by the FDA. (Tr. 5 ll. 15–16, Feb. 16, 2007.) Defendants Top Quality, A&C, and Favor Food therefore argued that the goods seized at their stores are genuine and do not infringe any trademarks used by plaintiff. Counsel for W.J. Inc. stated that his client recently lost his lease and therefore is not contesting the preliminary injunction. (Tr. 18 ll. 22–25, Feb. 16, 2007.)

---

[2] Counsel for A&C and Favor Food stated at the hearing that Favor Food sold its business to Best Choice Foods, Inc., prior to the seizure and that the seizure was conducted on the premises of Best Choice Foods, Inc., which is not a party to this action. Counsel did not submit any evidence to the Court on this issue. However, because the Court vacates the seizure order on other grounds, the Court need not address this argument.

2

For the reasons set forth below, the Court grants plaintiff's application for a preliminary injunction and confirms the order of seizure with respect to defendant W.J. Inc. The Court denies plaintiff's application for a preliminary injunction and grants defendants' motion to vacate the order of seizure with respect to defendants Top Quality, A&C, and Favor Food.

## LEGAL STANDARD

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor." *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). In trademark infringement cases, irreparable harm is presumed once the plaintiff has shown a likelihood of success on the merits. *New Kayak Pool Corp. v. R.P. Pools, Inc.*, 246 F.3d 183, 185 (2d Cir. 2001). Therefore, the Court here addresses whether Plaintiff can show a likelihood of success on the merits in this case. To establish a likelihood of success on the merits, Prince of Peace must show (1) that it has valid trademark rights, and (2) that defendants' sale of Po Chai Pills is likely to confuse United States consumers. *Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

## DISCUSSION

1. **Personal Jurisdiction**

Before addressing whether plaintiff is likely to succeed on the merits, the Court addresses the argument that it lacks personal jurisdiction with respect to Top Quality. "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of

3

jurisdiction." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-567 (2d Cir. 1996) (citation omitted). Here, because the parties have not completed briefing on plaintiff's motion to dismiss and have not begun discovery, the Court will not rule on Top Quality's motion at this time but will merely consider whether plaintiff has set forth "legally sufficient allegations of jurisdiction" for purposes of this motion for a preliminary injunction. The Court finds that plaintiff has not.

Top Quality claims to be a single retail store in New Jersey and asserts that it does not transact any business in the state of New York or have other ties that might subject it to personal jurisdiction in New York under the state's jurisdictional statutes, New York Civil Practice Laws and Rules sections 301 and 302. Plaintiff does not dispute this assertion; instead, plaintiff states that this Court has personal jurisdiction over Top Quality "because its principal place of business is located in Parsippany, NJ, within 100 miles of the courthouse." (Compl. ¶ 3.) Plaintiff appears to be invoking the so-called "bulge" jurisdiction authorized by Rule 4(k) of the Federal Rules of Civil Procedure. Under Rule 4(k)(1)(B), service of process is sufficient to establish *in personam* jurisdiction over a defendant "who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues . . . ." By its own terms, "the bulge service provision . . . applies in terms only to third parties impleaded under Rule 14, and additional parties to a pending action or a counterclaim or cross claim brought in under Rule 19." Jean F. Rydstrom, Annotation, Validity, Construction, and Effect of "100-mile" provision of Rule 4(f), Federal Rules of Civil Procedure, Permitting Service of Process Outside State in which Court Sits, 8 A.L.R. Fed. 784 (2006); *see also Roscoe-Ajax Constr. Co. v. Columbia Acoustics & Fireproofing Co.*, 39 F.R.D. 608, 609–610 (S.D.N.Y. 1966). Because a plaintiff may not use the bulge

4

provision to obtain service on an original defendant, the Court finds that, at this stage, plaintiff has failed to show that this Court has personal jurisdiction over Top Quality.

2.  **Validity of Trademark Assignment**

Turning now to the two-prong test for likelihood of success on the merits of its trademark claims against the remaining defendants, the Court finds that plaintiff has not shown that it has valid trademark rights. Plaintiff claims that LCST designated plaintiff as the exclusive distributor of Po Chai Pills in the United States and assigned five relevant trademarks[3] to plaintiff. (Compl. ¶¶ 13–16.) Only the federal "registrant" or legal assignee has standing to sue for trademark infringement under Section 32(1) of the Lanham Act, for federal trademark dilution under Section 43(c) of the Lanham Act, or for dilution under Section 360-l of the New York General Business Law. *See* 6 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 32:3; *Houbigant, Inc. v. ACB Mercantile*, 914 F. Supp. 964, 990 (S.D.N.Y. 1995) (dismissing licensee's action for dilution under New York state law); *see also Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98 Civ. 5408 (THK), 2001 U.S. Dist. LEXIS 18738, at *14–*15 (S.D.N.Y. Nov. 16, 2001) ("[O]nly the registrant of a trademark or its legal representatives, predecessors, successors, and assigns have standing to sue for trademark infringement under § 1114."). Here, however, the document that plaintiff claims to be an "assignment"—a distributorship agreement—merely grants plaintiff exclusive use of, and enforcement rights to, various trademarks in the United States. (Rick Wong ("Wong") Decl., Ex. A.) Unlike an assignment, which is an irrevocable transfer of all rights in a mark (McCarthy § 18:1), this document explicitly permits LCST to terminate the license. (Wong Decl., Ex. A ("[T]his grant shall remain valid until terminated by written notice to the Trademark Office of

---

[3] The relevant trademarks bear registration numbers 3065427, 3122730, 31227279, 2537896, and 1840260. (Compl. ¶ 13.)

5

the Territory.").) Plaintiff has not shown, therefore, that LCST has made a valid assignment of the relevant trademark rights to plaintiff.

Even if the assignment were valid, plaintiff has failed to provide an adequate chain of title for the trademarks at issue. The Trademark Assignment Details printout from the USPTO states that LCST in *Hong Kong* is the "assignor" (Wong Decl. Ex. B), while the distributorship agreement states that LCST in *Singapore* is granting use of its trademark to plaintiff (*id.* Ex. A). Plaintiff has not provided an explanation for this discrepancy. Moreover, the trademarks are registered to Quinwood Limited (*id.* Ex. C–F), and a representative for Quinwood Limited signed the distributorship agreement (*id.* Ex. A), yet plaintiff has not explained the relationship between Quinwood and LCST or how it is that LCST claims to be the "owner of various Quinwood Limited U.S. registered trademarks" (*id.*). Plaintiff has thus failed to demonstrate that it is the owner or assignee of the marks at issue in this case. Accordingly, the Court finds that plaintiff has failed to show a likelihood that it has standing to pursue its dilution and trademark infringement claims.

Even where a plaintiff lacks standing to sue for trademark infringement or dilution, however, a plaintiff may have standing to bring a false designation and description claim and other common law claims. *See* 6 McCarthy on Trademarks and Unfair Competition § 32:19. Section 43(a) permits "any person who believes that he or she is likely to be damaged" by the use of any such false description or representation to bring a civil action. 15 U.S.C. § 1125(a). "Courts have consistently recognized that this broad language confers standing on trademark licensees." *Calvin Klein Jeanswear Co.*, 2001 U.S. Dist. LEXIS 18738, at *18; *see Murphy v. Provident Mutual Life Ins. Co.*, 756 F. Supp. 83, 86 (D. Conn.) ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks."),

*aff'd*, 923 F.2d 923 (2d Cir.1990). As the exclusive licensee of the trademarks at issue in this case, plaintiff has standing to assert its Section 43(a) claim and unfair competition regardless of whether it owns the marks.

3. **Likelihood of Confusion**

In order to prevail on its false designation and description claim under Section 43(a) of the Lanham Act, plaintiff must show that defendants' use of its mark "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of . . . his or her goods . . . by another person."[4] *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 347 (S.D.N.Y. 1998) (citing 15 U.S.C. § 1125). Ordinarily, "likelihood of confusion is determined by application of the nine 'Polaroid factors.' This complex assessment, though, is not useful in the context of gray market goods, since such goods typically utilize the exact same marks, sold in the original packaging legitimately obtained from the manufacturer." *Novartis Animal Health US, Inc. v. Abbeyvet Exp. Ltd.*, 409 F. Supp. 2d 259, 260 (S.D.N.Y. 2005) (internal citation omitted) (citing *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 74 (2d Cir. 1987) (Cardamone, J., concurring) (stating that the traditional consumer confusion test is difficult to apply for "gray goods")). Here, defendants' sales involve Po Chai Pills manufactured by LCST, whom plaintiff itself describes as "the owner" of the relevant trademarks. (Wong Decl. ¶ 5.) Thus, the seized goods are "neither counterfeit goods nor goods masquerading as genuine by adopting confusingly similar marks; they use the actual

---

[4] This likelihood-of-confusion test also would apply to plaintiff's trademark infringement claim under Section 32(1) of the Lanham Act if plaintiff could show that it had standing to assert that claim. *See* 15 U.S.C. § 1114(1); *Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) ("A claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two-prong test," which "looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.")

7

marks and the marks are lawfully affixed to them." *Novartis Animal Health US, Inc.*, 409 F. Supp. 2d at 260. "Under these circumstances, courts have adopted a simpler test, finding a likelihood of confusion if: (1) the goods were not intended to be sold in the United States, and (2) they are materially different from the goods typically sold in the United States." *Original Appalachian Artworks, Inc.*, 816 F.2d at 73; *Helene Curtis, Inc. v. Nat'l Wholesale Liquidators, Inc.*, 890 F. Supp. 152, 158 (E.D.N.Y. 1995).

The Court finds for purposes of the present motion that there is no likelihood of confusion between plaintiff's goods and the goods seized from Top Quality, A&C, and Favor Food. As noted already, plaintiff concedes that the seized goods were all manufactured by LCST. (Tr. 5 ll. 15–16, Feb. 16, 2007.) Top Quality, A&C, and Favor Food purchased the seized packages of Po Chai Pills from Madison One Acme Inc. ("Madison One"). (So Aff. ¶ 4). A&C submitted to the Court an affidavit from Phillip So,[5] a representative for Madison One, in which he states that Madison One purchases its supply of Po Chai Pills from Mega-Care Pharmaceutical (Holdings) Ltd. ("MegaCare"), that MegaCare was authorized by LCST to resell the pills in the United States, and that LCST has approved MegaCare's packaging. (*Id.* ¶¶ 4–5.) As noted, the pills sold by LCST to plaintiff and defendants Top Quality, A&C, and Favor Food carry a "Supplement Facts" panel on the packaging as required by the FDA. (Wai Hing Lee

---

[5] Plaintiff objects to portions of So's statement as hearsay. The Court notes, however, that "[i]n considering a motion for a preliminary injunction, the Court is given discretion to rely solely on affidavits, depositions, and sworn testimony, *SEC v. Frank*, 388 F.2d 486, 490–91 (2nd Cir. 1968), even including hearsay. *Federal Savings & Loan Ins. Co. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987)." *SEC v. Prater*, 289 F. Supp. 2d 39, 50 (D. Conn. 2003). In addition, the "Affidavit" is not notarized, although in it So states, "I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, and that statements that are not from my personal knowledge are believed to be true." The Court will take the "Affidavit" as a declaration under 28 U.S.C. § 1746. *See BMS Entertainment/Heat Music LLC v. Bridges*, No. 04 Civ. 2584 (PKC), 2005 U.S. Dist. LEXIS 23000, 2005 WL 2482493, *2 n.1 (S.D.N.Y. Oct. 7, 2005).

Wong Decl. A–C; Wong Decl. Ex. H.) The Court therefore finds that plaintiff has not shown a likelihood of success on the first prong of the likelihood-of-confusion test, because defendants' evidence that the goods seized at Top Quality, A&C, and Favor Food were intended to be sold in the United States is unrebutted.

In addition, plaintiff has not shown a likelihood of success on the second prong of the test, because the goods seized at Top Quality, A&C, and Favor Food seized do not appear materially different from goods typically sold in the United States. These three defendants' goods bear the largely the same graphics as plaintiff's goods and list the weight and ingredients in the same manner as plaintiff's goods. (*Id.*) Top Quality, A&C, and Favor Food also have represented to the Court that the ingredients of their pills are identical to plaintiff's. (A&C Opp'n 6; Top Quality Opp'n 8.) Plaintiff nonetheless argues that its quality control program, which consists of removing expired products from store shelves, separates its "genuine" goods from defendants' gray market goods. (Wong Decl. ¶ 8.) A gray market good is not considered genuine if the goods do not meet the trademark owner's quality control standards. *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994). Here, however, plaintiff is at best a licensee rather than an assignee of the trademark owner, and thus it is questionable whether its quality control standards can be used as a yardstick for goods carrying the trademark owner's actual mark. *See id.*; McCarthy § 29:51.2 ("Some courts have held that unauthorized actions which modify the parallel imported goods or their containers in a way *that deprives the trademark owner of the means to control quality* can constitute trademark infringement. (emphasis added)); *cf. Ahava (USA), Inc. v. J.W.G., Ltd.*, 250 F. Supp. 2d 366, 370 (S.D.N.Y. 2003) (finding likelihood of confusion where U.S. assignee brought trademark infringement claim). Even if plaintiff could properly assert the trademark owner's right to control quality,

9

however, the Court doubts that periodic shelf inspections, without more, can render plaintiff's goods materially different from defendants'. *See* 2 Anne Gilson LaLonde, Analysis, Likelihood of Confusion and Counterfeiting, Trademark Protection and Practice § 5.10A[3].

In contrast, the goods seized at W.J. Inc. do not bear the "Supplement Facts" panel required by the FDA and the ingredients are listed in Chinese. The Court concludes that these goods were not intended to be sold in the United States. The Court is thus persuaded that plaintiff has demonstrated a likelihood of success on the merits of its false designation and description claim with respect to the goods seized at W.J. Inc.

The Second Circuit has instructed district courts to analyze claims under New York's unfair competition statute in the same manner in which they analyze claims under the Lanham Act. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006). For the reasons stated above, plaintiff has not shown a likelihood of success on its claims under New York state law with respect to the goods seized at Top Quality, A&C, and Favor Food, but has shown a likelihood of success on its state claims with respect to the goods seized at W.J. Inc.

4. **Damages**

Top Quality and A&C seek damages for lost sales while their stores were closed during the seizure. A&C also claims damages for lost future revenue resulting from plaintiff's publicizing the seizure in the Sunday, February 11, 2007 issue of the *World Journal*, a Chinese language newspaper. (Lin Aff. ¶¶ 11–13.) Under 15 U.S.C. § 1116(d)(11),

> A person who suffers damage by reason of a wrongful seizure under [§ 116(d)(4)] has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee. . . .

Case 1:07-cv-00349-LAP-FM   Document 24   Filed 03/07/07   Page 11 of 11

Neither Top Quality nor A&C has submitted documentation to support their claims for damages. If plaintiff and defendants are unable to resolve these issues themselves, defendants may bring these complaints as counterclaims. *See N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226, 2006 WL 838993, at *6 n.9 (S.D.N.Y. Mar. 30, 2006).

## SUMMARY

For the reasons set forth above, the Court grants plaintiff's application for a preliminary injunction [1] and confirms the order of seizure with respect to defendant W.J. Inc. The Court denies plaintiff's application for a preliminary injunction [1] and grants defendants' motion to vacate the order of seizure with respect to defendants Top Quality, A&C, and Favor Food.

SO ORDERED.

Dated: New York, New York
       March 6, 2007

Richard J. Holwell
United States District Judge

11