UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------Y

PRINCE OF PEACE ENTERPRISES, INC.,          :

                            Plaintiff,          :

          - against -          :

TOP QUALITY FOOD MARKET, LLC, et al., :

                  Defendants.          :

-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY
FILED  2/28/14

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
LORETTA A. PRESKA**

7 Civ. 349 (LAP) (FM)

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

        Plaintiff Prince of Peace Enterprises, Inc. ("POP") commenced this action

against defendants A&C Supermarket, Inc. ("A&C"), Tu Chin Lin, Xuiyan Huang, and

Yinghai Shi (collectively, the "A&C Defendants"), and others, alleging that they

infringed POP's registered trademarks by selling herbal supplements bearing the Po Chai

Pills ("PC Pills") trademark.  After securing an <u>ex parte</u> seizure order, POP caused the

Marshals Service to remove ninety-six boxes of the allegedly infringing goods from the

premises of A&C on January 28, 2007.  During the execution of the seizure order, A&C

allegedly had to shutter its doors for approximately two hours.

        Judge Holwell, to whom this case then was assigned, later vacated the

seizure order and determined that the A&C Defendants could recover damages because

the seizure that POP initiated was unwarranted.  The matter subsequently was referred to

me to conduct an inquest.  For the reasons set forth below, I recommend that the A&C

Defendants be awarded $22,535, consisting of $192 for products seized but not returned, and attorneys' fees in the amount of $22,343.  In addition, the A&C Defendants should be awarded prejudgment interest at a rate equal to the Federal short-term rate determined by the Secretary of the Treasury plus three percentage points.

II.    Procedural History

This case had a somewhat convoluted history before being reassigned to Your Honor on April 13, 2012.  (See ECF No. 150).  On January 16, 2007, POP filed a complaint against the A&C Defendants, four other named defendants, and fifty fictitious defendants.  In its complaint, POP alleged that the defendants had engaged in trademark infringement, false designation of origin, false description and representation, federal and state trademark dilution, and common law unfair competition.  (See ECF No. 1) ("Complaint" or "Compl.").  POP also sought a temporary restraining order and preliminary and permanent injunctive relief.  (Id.).

On January 17, 2007, Judge Holwell granted POP's application for an ex parte seizure order.  (ECF No. 120 (Decl. of Xian Feng Zou, Esq., dated May 31, 2011 ("Zou Decl.")), Ex. B ("Seizure Order")).  Eleven days later, on January 28, 2007, the Marshals Service executed the Seizure Order, taking ninety-six boxes of PC Pills from A&C's premises.  (ECF No. 118 (Aff. of Tu Chin Lin ("Mr. Lin"), sworn to on May 31, 2011 ("Lin Aff.")), ¶¶ 3, 5).

Thereafter, on February 16, 2007, Judge Holwell conducted a hearing to determine whether to confirm the Seizure Order.  Based on the evidence adduced at the

2

hearing, Judge Holwell found that the true owner of the trademark had not assigned the

PC Pills trademark, and that POP therefore lacked standing to bring its dilution and

trademark infringement claims against the A&C Defendants.  (Zou Decl., Ex. C ("March

6 Decision"), at 5-6).  He further determined that POP failed to state claims against the

A&C Defendants under either Section 43(a) of the Lanham Act or New York's unfair

competition statute.  (Id. at 7-10).[1]  Because POP had not proven a likelihood of success

on the merits of its claims against the A&C Defendants, the Court denied POP's

application for a preliminary injunction and vacated the Seizure Order with respect to

them.  (Id. at 11).

On March 9, 2007, POP filed an Amended Complaint, but did not change

its factual allegations and claims regarding the A&C Defendants.  (See ECF No. 25).

Thereafter, on April 20, 2007, the A&C Defendants filed an Answer to the Amended

Complaint, in which they asserted a counterclaim for the damages allegedly resulting

from POP's wrongful seizure.  (ECF No. 40) ("Counterclaim").  In the Counterclaim, the

A&C Defendants also alleged that POP had violated 15 U.S.C. § 1116(d)(6) by

publishing notice of the seizure in the World Journal, a Chinese language newspaper

distributed in New York City.[2]  (Counterclaim ¶ 12).  The A&C Defendants further

---

[1]       On March 14, 2007, POP filed a motion to "correct" the March 6 Decision.  (ECF No. 26).  On July 26, 2007, Judge Holwell issued a Memorandum Opinion and Order affirming the March 6 Decision and denying POP's motion for reconsideration.  (ECF No. 60).

[2]       Section 1116(d)(6) requires a court to "take appropriate action to protect the person against whom an order under this subsection is directed from publicity, by or at the

(continued...)

alleged that, by virtue of POP's "bad faith in procuring the wrongful seizure," they were entitled to recover their lost profits, cost of materials, loss of good will, legal fees, and punitive damages.  (Id. ¶ 14).  POP did not respond to the Counterclaim.

The A&C Defendants subsequently filed a motion to dismiss POP's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  (ECF No. 50).  On January 12, 2011, after POP failed to respond, Judge Holwell granted that motion and ordered that judgment be entered in favor of A&C on their Counterclaim.  (ECF No. 105 ("January 12 Decision")). Judge Holwell further referred the matter to me to conduct an inquest to determine the A&C Defendants' damages.  (Id. at 23).

By order dated March 29, 2011, I established a briefing schedule for this inquest.  (ECF No. 115).  I further directed that POP indicate whether it wished to have a hearing concerning the A&C Defendants' request for damages.  (Id.).  The A&C Defendants filed their Inquest Memorandum and supporting documents on May 31, 2011. (ECF Nos. 117-20).  On July 8, 2011, POP filed its opposition papers.  (ECF Nos. 127-30).  In those papers, POP requested a hearing to cross-examine the A&C Defendants' affiant, Tu Chin Lin.  (ECF No. 128 ("Opp. Mem.") at 13).

While the inquest filings were underway, POP filed a motion to reopen the case, pursuant to Federal Rule of Civil Procedure 60(b)(6), on the ground that its former

---

²(...continued)
behest of the plaintiff, about such order and any seizure under such order."

attorney had failed to oppose the A&C Defendants' motion because he was mentally incapacitated.  (ECF Nos. 122, 124).  On September 21, 2012, Your Honor denied that motion because POP had failed to show that "extraordinary circumstances" warranted that relief.  (ECF No. 151).

On July 20, 2013, because there had been additional motion practice, and therefore additional legal fees incurred, the A&C Defendants submitted a Supplemental Declaration of Xian Feng Zou.  (ECF No. 154).  Thereafter, on August 1, 2013, POP filed papers opposing the A&C Defendants' supplemental request for fees.  (ECF Nos. 156, 157 ("Supp. Opp.")).  Consequently, the matter is now fully briefed.

III.    Standard of Review

Because POP never answered the A&C Defendants' Counterclaim, the well-pleaded factual allegations therein must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).  Consequently, the A&C Defendants have established (as Judge Holwell also found) that the seizure of the PC Pills from A&C's premises was wrongful.  (Counterclaim ¶ 10).  A&C nevertheless still must submit proof sufficient to enable this Court to determine their losses since a default "is not an admission of damages."  City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011).

In its opposition papers, POP seeks a hearing so that it may cross-examine Mr. Lin, the individual at A&C who submitted an affidavit seeking to establish the A&C

Defendants' damages other than attorneys' fees.  (See Opp. Mem. at 13).  Although a claimant seeking to recover damages must prove its claim by submitting evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the claimant's evidence establishes, with reasonable certainty, the basis for the damages sought, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Whether to hold a hearing is a matter committed to "the discretion of the district court."  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).  Having received extensive submissions from the parties, and in view of the relatively modest sums at issue, I find that a hearing is unnecessary and would serve only to increase the fees that the A&C Defendants will recover.  See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (hearing not necessary where district judge was "inundated with affidavits, evidence, and oral presentations by opposing counsel").

## IV.   Discussion

### A.   Compensatory Damages

In their inquest papers, the A&C Defendants seek to recover $192 for PC Pills that were seized but never returned, $2,000 for processed meat and seafood that could not be sold after the Marshals shuttered the store, $2,064 in lost wages, lost profits in the amount of $4,577.60, and attorneys' fees in the amount of $29,721.95.  (See ECF No. 117 ¶¶ 16-20; Supp. Decl. ¶¶ 4-7).  Their entitlement to such damages is governed by

6

15 U.S.C. § 1116(d)(11).  That statute provides that a person subjected to a wrongful seizure is

> entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee.

The A&C Defendants must, however, establish their damages with "reasonable certainty."  Transatlantic Marine, 109 F.3d at 111.  This, in turn, requires that the damages be established through admissible evidence, not simply the assertions of those seeking damages.  See House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) ("[T]he district court cannot simply rely on the plaintiff's statement of damages . . . .") (citing Cesario v. BNI Constr., Inc., No. 07 Civ. 8545 (LLS) (GWG), 2008 WL 5210209, at *2 (S.D.N.Y. Dec. 15, 2008); Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., No. 06 Civ. 7827 (HB) (GWG), 2008 WL 4449533, at *3 (S.D.N.Y. Oct. 2, 2008); Smith ex rel. Smith v. Islamic Emirate of Afg., 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003)); Transatlantic Marine, 109 F.3d at 111 ("While the District Court may not have been obligated to hold an evidentiary hearing, it could not just accept Transatlantic's statement of the damages.").

The first item for which the A&C Defendants seek to recover is the ninety-six seized boxes of PC Pills which allegedly had a "total retail value" of $192.  (Lin Aff. ¶ 5).  Reflecting a lack of detail that is common to many elements of their damages claim,

the A&C Defendants have not established the cost of those items, so it is impossible to determine what A&C's actual lost profits were. Nevertheless, because the amount sought is de minimis, and because POP has not opposed this aspect of the A&C Defendants' damages claim, the Court should award the A&C Defendants $192 for the seized PC Pills.

Next, the A&C Defendants seek to recover $2,000 for "lost materials" that are further described as "unpaid processed meat/seafood which [was] ordered by customers, but . . . disposed [of] after the . . . closure" of the supermarket. (Id. ¶ 7). No explanation is given as to how this sum was calculated, nor is the Court able to determine whether the sum sought reflects the retail price of the unpaid goods, the profit that A&C allegedly lost, or the wholesale cost of the goods. Furthermore, no documentation substantiating this item of damage has been furnished to the Court. The A&C Defendants thus are asking the Court to accept at face value this aspect of their damages claim. In the absence of any further explanation or substantiation, the plaintiffs have failed to establish this element of their claim with reasonable certainty. The lost material claim therefore should be disallowed.

The A&C Defendants also seek to recover lost wages in the amount of $2,064 resulting from the seizure and the closure of A&C. (Id.). The rationale for this aspect of the A&C Defendants' damages is that A&C could not avoid incurring these costs while the store was closed. Once again, the A&C Defendants have not presented

any documentation regarding the workers who were present that day or their hourly pay. Accordingly, this aspect of the A&C Defendants' damages claim should be denied.

The largest component of the A&C Defendants' compensatory damages claim relates to their lost profits, which are alleged to total $4,577.60.  (Id. ¶¶ 6-7).  As to this element of their claim, the Court does not write on a clean slate.  Indeed, in their motion to dismiss POP's Amended Complaint, the A&C Defendants submitted an affidavit by Mr. Lin that is identical to his affidavit in support of the damages inquest, save for the date.  (See ECF No. 53).  Appended to both his current and prior affidavits is a two-line chart that Mr. Lin claims reflects A&C's sales on the date of the seizure and on the same day one week earlier.  (See id. Ex. A; Lin Aff. Ex. A).  Mr. Lin further represents in both affidavits that A&C's gross profit margin was "approximately 35%," and that A&C therefore had lost $4,577.60 in profits based on a $13,078.87 decline in sales from the prior week.  (ECF No. 53 ¶ 7; Lin Aff. ¶ 7).  In the January 12 Decision, however, Judge Holwell noted that the Court could not determine "the existence or extent" of A&C's lost profits based on this cursory submission.  (See January 12 Decision at 17).  Despite this admonition, the A&C Defendants failed to submit any further substantiation of their lost profits to this Court.  Merely re-dating the affidavit obviously does not cure the problem.  Accordingly, because the A&C Defendants have failed to prove A&C's lost profits with a reasonable degree of certainty despite two attempts, this aspect of their damages claim should be disallowed.

B.    Attorneys' Fees

The largest component of the A&C Defendants' overall damages arising out of the wrongful seizure is their attorneys' fees.  The A&C Defendants seek to recover a total of $29,721.95 that their counsel have billed.

To determine the reasonable attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," which has often previously been referred to as the "lodestar."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 183, 189-90 (2d Cir. 2008).  The presumptively reasonable fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  The Supreme Court has cautioned, however, that a "request for attorney's fees should not result in a second major litigation" and that district court decisions concerning such fees should be "concise."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

1.    Reasonable Hourly Rate

In assessing the reasonableness of the hourly rates charged by the A&C Defendants' counsel, the court may consider the "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  Additionally, the Court may rely on its own knowledge of private firm hourly rates.  Miele v. N.Y. State Teamsters Conference

Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).  The "relevant community" is "normally the forum district."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 369 F.3d 91, 96 (2d Cir. 2004).

A&C is seeking to recover fees for attorney Xian Feng Zou and his associate Tony Tsai.  Throughout this action, Mr. Zou billed at an hourly rate of $200.[3] (Supp. ¶ 8).  Mr. Zou has been "actively practicing law" in the New York area for over fifteen years.  (Supp. ¶ 8; see Zou Decl. ¶ 11).  Mr. Tsai, who is described simply as an attorney admitted to the New York bar, billed at the rate of $150 per hour.  (Zou Decl. ¶ 14).  POP does not challenge these rates, which are at the lower end of the spectrum for cases litigated in this District.  See, e.g., Coe v. Town of Blooming Grove, 714 F. Supp. 2d 439, 450 (S.D.N.Y. 2010) (noting range of $225 to $375 per hour for civil rights litigators in the Southern District of New York) (citing Townsend v. Benjamin Enter., Inc., 05 Civ. 9378 (GAY), 2009 WL 8758822, at *3 (S.D.N.Y. Oct. 2, 2009), aff'd, 679 F.3d 41 (2d Cir. 2012)); Torres v. City of N.Y., No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) (rate of $350 per hour appropriate for attorney with ten years of experience).  Indeed, they would be reasonable even if the Eastern District of New York, where counsel maintains offices, were deemed the relevant community.  See Aiello v. Town of Brookhaven, No. 94-CV-2622 (FB) (WDW), 2005 WL 1397202, at *5 (E.D.N.Y. June 13, 2005) ("Hourly rates approved in recent Eastern

---

[3]     Mr. Zou informs the Court that his rate increased to $250 per hour during the pendency of this litigation, but that he did not charge the A&C Defendants this higher rate.  (See Supp. ¶ 8).

District of New York cases have ranged from $200 to $300 for partners, $100 to $150 for

junior associates, and $200 to $250 for senior associates.").

>       2.      Hours Reasonably Expended

Your Honor has summarized the steps a court must take to determine the

reasonableness of the hours reported by counsel as follows:

> [T]he court must look first to the time and work as they are
> documented by the attorney's records.  See Forschner Group,
> Inc. v. Arrow Trading Co., Inc., No. 92 Civ. 6953(LAP), 1998
> WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998).  Next the court
> looks to "its own familiarity with the case and its experience
> generally. . . .  Because attorneys' fees are dependent on the
> unique facts of each case, the resolution of the issue is
> committed to the discretion of the district court."  AFP
> Imaging Corp. v. Phillips Medizin Sys., No. 92 Civ. 6211
> (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13, 1994)
> (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)
> (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d  Cir.
> 1985))).

>  . . . .

>       Finally, billing judgment must be factored into the
> equation.  Hensley, 461 U.S. at 434; DiFilippo, 759 F.2d at
> 235-36.  If a court finds that the fee applicant's claim is
> excessive, or that time spent was wasteful or duplicative, it
> may decrease or disallow certain hours or, where the
> application for fees is voluminous, order an across-the-board
> percentage reduction in compensable hours.  In re "Agent
> Orange" Products Liab. Litig., 818 F.2d 226, 237 (2d Cir.
> 1987) (stating that "in cases in which substantial numbers of
> voluminous fee petitions are filed, the district court has the
> authority to make across-the-board percentage cuts in hours
> 'as a practical means of trimming fat from a fee application'"
> (quoting Carey, 711 F.2d at 1146)); see also United States
> Football League v. National Football League, 887 F.2d 408,
> 415 (2d Cir. 1989) (approving a percentage reduction of total
> fee award to account for vagueness in documentation of
> certain time entries).

<u>Santa Fe Natural Tobacco Co. v. Spitzer</u>, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631, at *3 (S.D.N.Y. Mar. 29, 2002).

A&C seeks reimbursement for a total of 154.56 hours of attorney time. POP argues that these hours should be disallowed in their entirety or reduced substantially because Mr. Zou has not submitted evidence sufficient to support the reimbursement and has billed excessive amounts of time for numerous activities.  These concerns are addressed below.

a.    <u>Sufficiency of the Evidence</u>

To enable a court to determine the reasonableness of the hours expended, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the number of hours expended and the nature of the work done.  <u>See Lewis v. Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986); <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983); <u>Puglisi v. Underhill Park Taxpayer Ass'n</u>, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).  POP argues in this regard that the A&C Defendants have "failed to provide any indication that Mr. Zou's . . . invoice[s are] based on contemporaneous billing records."  (Supp. Opp. at 2).  The first two invoices, however, are accompanied by copies of checks reflecting corresponding payments and the final invoice is in substantially similar form.  This is more than enough to permit the Court to conclude that the time records submitted reflect contemporaneous time charges, not the sort of post-hoc cobbling together of notes, emails and calendars that courts have disapproved of in the past.  <u>See Handschu v. Special Servs. Div.</u>, 727 F. Supp. 2d 239, 250-51 (S.D.N.Y. 2010); <u>Scott v. City of N.Y.</u>, 626 F.3d 130, 134 (2d Cir. 2010)

(vacating award of fees to attorney who failed to keep contemporaneous records, and requiring district court to explain why he should be given "the benefit of the doubt").

       c.      <u>Vague Descriptions and Block Billing</u>

POP argues that the attorneys' hours should be reduced because counsels' descriptions of their activities are too vague and because they engaged in "block billing." (<u>See</u> Opp. 10; Supp. Opp. 6-8).  Counsel are required to record the tasks they perform, but need not do so in excruciating detail.  <u>See</u> <u>Hensley</u>, 461 U.S. at 437 n.12 (counsel need not "record in great detail how each minute of [their] time was expended"); <u>LV v. N.Y.C. Dep't of Educ.</u>, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010) ("It is not necessary to report 'the exact number of minutes spent on each activity.'") (quoting <u>McDow v. Rosado</u>, 657 F. Supp. 2d 463, 467 (S.D.N.Y. 2009)).  Entries on a time sheet nevertheless must be sufficiently detailed to allow the court to assess whether the time expended was reasonable.  <u>See</u> <u>Wilder v. Bernstein</u>, 975 F. Supp. 276, 285-86 (S.D.N.Y. 1997).

Further, although it is not forbidden, the practice of block-billing (combining several tasks into one entry) makes it "difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." <u>Husain v. Springer</u>, No. 97 CV 2982 (NG) (CLP), 2013 WL 1122718, at *10 (E.D.N.Y. Mar. 15, 2013) (quoting <u>Simmonds v. N.Y.C. Dep't of Corr.</u>, No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *8 (S.D.N.Y. Sept. 16, 2008)); <u>E.S. v. Katonah-Lewisboro Sch. Dist.</u>, 796 F. Supp. 2d 421, 432 (S.D.N.Y. 2011).  In such cases, an across-the-board reduction is appropriate.  <u>See, e.g.</u>, <u>Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.</u>, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003).

Here, the A&C attorneys' invoices reflect both problems.  For example, the invoices include numerous vague entries for activities such as "Letter to Hoffman," (10/1/07), "Letter to Kelly" (10/2/07), "Talked to Client" (7/28/08), "Received fax and reviewed," (3/13/11; 3/14/11), and "Discussed with ECF, letter to Court" (6/1/11).  (Zou Decl., Ex. F; Supp. Ex. H).  The invoices also contain some "block-billing" entries, such as February 13, 2007, when Mr. Tsai billed 2.5 hours ($375.00), for work described as: "Reviewed case file, performed research, Translation, prepared Opposition to Order To Show Cause," and February 15, 2007, when Mr. Tsai billed four hours for work described as:  "Prepared Client's Affidavit, Called Solstice[,] prepared Opposition to Order to Show Cause."  (Zou Decl., Ex. F).[4]  This, however, is not a case in which the Court has the task of separating compensable activities from others that are non-compensable because the party seeking fees only prevailed on some of its claims.  Nor is this a case in which the Court needs to dissect the various time entries to determine whether the total time expended by counsel following the seizure is defensible. Accordingly, the fact that some entries might have benefitted from greater specificity is not an impediment to reaching a just result in fixing the fee award.

---

[4]      POP also contends that the time entries on June 30, 2011 ("Received opposition memo and motion, memos declarations from Plaintiff, reviewed for opposition"), and July 5, 2011 ("Reviewed memo and motion"), should be disallowed because POP's opposition to the A&C Defendants' inquest memorandum was not filed until July 8, 2011.  (See Supp. Opp. at 10-11).  POP filed its motion to reopen, however, on June 30, 2011, so there is no reason to believe that these time entries are inaccurate.

d.     Excessive Billing

POP also contends that counsel billed excessively for various tasks.  These assertions fall into four broad categories.

i.     Review of Simple Documents

POP first alleges that counsel "billed an unreasonable amount of time reviewing brief court orders and Electronic Case Filing ('ECF') notifications."  (Opp. 6). POP points to twenty-three specific entries that it alleges represent excessive billing.  For eighteen of those twenty-three entries, Mr. Zou billed 0.17 hours – slightly more than ten minutes, which is also the smallest increment that appears anywhere in his records. District courts in this Circuit disagree as to "whether there should be 'a prohibition on billing in increments larger than six minutes.'"  See generally G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 441-42 (S.D.N.Y. 2012).  Here, counsels' minimum billing increment was slightly over ten minutes (60 mins. x 0.17 = 10.2 mins.).[5] However, to the extent that this practice inflated the amount of time for which the A&C Defendants seek to recover, the problem can be addressed through an overall percentage reduction.

ii.     Drafting and Reviewing Memoranda

POP also takes issue with four entries related to the drafting of the A&C Defendants' answer to the Amended Complaint, as well as eight entries related to the preparation of A&C's motion to dismiss.  (Opp. at 7-8).  All of these entries appear in the

---

[5]     On April 6, 2007, an entry appears in which Mr. Zou claims to have spent 0.06 hours on the task of reviewing a court notice.  However, the dollar amount associated with this entry corresponds to a time expenditure of 0.17 hours.

invoices for the period between March 12, 2007 and May 2, 2007, and they account for a total of 29.91 hours (6.58 for the Amended Complaint and 23.33 for the motion to dismiss).  Interestingly, in support of its claim that these hours are excessive, POP notes that "the total hours billed greatly exceed the number of written pages generated."  (Id. at 8).  Suffice it to say, if counsel always had to submit lengthy papers to justify their fees, the lives of the judges who have to review their bills would be even more miserable.  To the extent that POP's complaints are justified – and they are in part – the problem, once again, is best addressed through an overall adjustment, not a line-by-line post mortem.

### iii.   Telephone Conversations

POP takes issue with a total of 9.09 hours billed for telephone conversations with other attorneys, the Court, and the client.  (Opp. 9; Supp. Opp. 12).  Many entries are for activities with such descriptions as "Discussed case with co-defendant" (2/1/07), "Discussed case with Attorney Blair" (4/4/07, 5/1/07) and "Discussed case with Blair and Hoffman" (5/14/07).  (Opp. 9).  In POP's view, there was "nothing particularly unique about this case that require[d] counsel for co-defendants to collaborate so extensively." (Opp. 9).  The A&C Defendants were, however, sufficiently satisfied with their defense that they paid these time charges in full.  Moreover, the consultations with other counsel may have reduced the time that the A&C Defendants' counsel might otherwise have had to spend on various tasks.  The fact that there may have been frequent consultations therefore does not mean that they were excessive or that a reduction in those hours is warranted.

iv.   <u>Administrative Tasks</u>

Finally, POP maintains that Mr. Zou "billed an excessive 9.83 hours . . . performing clerical work." (Supp. Opp. 8). The entries POP points to consist of descriptions such as "Filed inquest memo with Court ECF" for 2.50 hours (5/31/11), "Worked on ECF filing" for 1.58 hours (6/1/11), and "Filed original opposition with court" for 2.5 hours (7/15/11), among others. (Supp. Ex. H). If the A&C Defendants had been represented by a large national firm, the rates for its paralegals to undertake these tasks might rival the hourly rates for counsel here. <u>See, e.g.</u>, <u>Union Cent. Life Ins. Co. v. Berger</u>, No. 10 Civ. 8408 (PGG), 2013 WL 6571079, at *5 (S.D.N.Y. Dec. 13, 2013) (citing recent cases approving paralegal rates of $125 to $140 per hour). Although it is understandable that a small firm such as the one retained by the A&C Defendants might not have the wherewithal to retain a full-time paralegal, their time for such tasks should have been billed at paralegal rates appropriate for a small firm. Accordingly, this too warrants a percentage reduction in the amount that the A&C Defendants may recover for their legal fees.

3.   <u>Reduction</u>

As noted previously, in reducing the total number of hours for which fees will be awarded, a "district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat." <u>McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund</u>, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotations omitted). Using this form of "rough justice," judges in this District have imposed varying percentage reductions. <u>See, e.g.</u>, <u>Romeo and Juliette Laser Hair</u>

Removal, Inc. v. Assara I, LLC, No. 08 Civ. 442 (TPG) (FM), 2013 WL 3322249, at *5-*8 (S.D.N.Y. July 7, 2013) (reducing fees of principal biller, an associate, by seventy-five percent because her time charges were "grossly excessive relative to the nature of the work performed"); Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05 Civ. 10100 (KMW) (KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing attorneys' fees by seventy-five percent because "a substantial amount of work performed . . . was redundant and unnecessarily duplicative"); Lide v. Abbott House, No. 05 Civ. 3790 (SAS), 2008 WL 495304, at *1-2 (S.D.N.Y. Feb. 25, 2008) (reducing attorney fee award by thirty percent for various reasons, including "excessive and unnecessary hours spent on indisputably straightforward tasks"); Winkler v. Metro. Life Ins. Co., No. 03 Civ. 9656 (SAS), 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006) (reducing lodestar figure by twenty percent for "excessive charges and lack of delegation").  In this case, having reviewed the time charges in considerable detail, I conclude that a twenty-five percent reduction in the hours billed by the A&C Defendants' counsel is necessary to compensate for the billing concerns noted above.

Counsels' indicated time charges total $29,721.95, consisting of $20,249.95 for their work through the filing of the inquest motion, and an additional $9,472 for their work to oppose the motion to reopen.  (Mem. ¶ 20; Supp. ¶ 7).  After making the aforementioned adjustments to the billings, the legal fees that I recommend be awarded may be summarized as follows:

| Biller | Hourly Rate | Hours Billed | Revised Hours | Total |
|--------|-------------|--------------|---------------|-------|
| Zou | $200 | 132.13 | 99.10 | $19,820 |
| Tsai | $150 | 22.43 | 16.82 | $2,523 |
| | | | | **$22,343** |

C.      Punitive Damages

The A&C Defendants also seek to recover punitive damages in the amount of $87,250.65.  (Supp. ¶ 5).  This sum is equal to three times the compensatory damages and attorneys' fees they seek.  Punitive damages are available under the Lanham Act "in instances where the seizure was sought in bad faith."  15 U.S.C. § 1116(d)(11).  Here, the Counterclaim alleges that POP effected the seizure in bad faith.  (Counterclaim ¶ 11).  This allegation, alone, is wholly conclusory and therefore not "well-pleaded."  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Accordingly, POP is not deemed to have admitted this allegation through its default.  The only factual allegation that could possibly support this claim of bad faith is the A&C Defendants' assertion that POP violated 15 U.S.C. § 1116(d)(6) by "publiciz[ing] the seizure in the World Journal, a very influential newspaper with a wide reach in the Chinese community," which, in turn, "served to greatly injure the goodwill of A&C."  (Lin Aff. ¶ 10).  However, even taken as true, this allegation is not sufficient to make out a claim of bad faith.  To show bad faith, the A&C Defendants would have to show that POP "sought the seizure knowing it was baseless."  Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co., 195 F.3d 765, 773 (5th Cir. 1999).  The Counterclaim makes no such assertion.

Further, as POP accurately observes, the announcement in the <u>World Journal</u> does not mention A&C or any other defendant in this case. Thus, the A&C Defendants' conclusory statement that the publication harmed its goodwill plainly is not a basis for the Court to conclude that POP acted with the requisite bad faith. <u>See</u> <u>B & G Plastics, Inc. v. Eastern Creative Indus., Inc.</u>, 269 F. Supp. 2d 450, 470-71 (S.D.N.Y. 2003) (industry-wide letter regarding patent infringement that did not mention plaintiff by name found insufficient for finding of bad faith at summary judgment stage).

Apart from the <u>World Journal</u> announcement and the boilerplate assertion of bad faith in the Counterclaim, the only conceivable basis for a finding that the seizure of A&C's PC Pills was sought in bad faith would have to be derived from Judge Holwell's January 12 Decision. In that decision, Judge Holwell concluded that POP was not entitled to the seizure of the PC Pills at A&C because POP was not an assignee of all of the PC Pills trademark owner's rights, was not the owner of a famous mark, and had not shown that the PC Pills at A&C were materially different from POP's own pills. (Jan. 12 Decision at 10-17). These conclusions, however, amount to nothing more than a finding that the seizure was improper, which, by itself, would not justify an award of punitive damages to the A&C Defendants.

Moreover, even if the factual allegations in the Counterclaim were sufficient to establish bad faith, it does not follow that punitive damages would be warranted. In <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1999), the Supreme Court delineated three factors that must be considered in deciding the amount of a punitive damages award. Those factors are the reprehensibility of the improper conduct,

21

the ratio between the punitive damages award and the claimant's actual loss, and any legislative sanctions provided for comparable misconduct.  Id. at 574-75; accord State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003).  For the same reasons that the A&C Defendants have not established bad faith, they also have not provided the Court with any basis on which to conclude that POP's conduct was "reprehensible." Further, the damages that they have established (apart from attorneys' fees) amount to a maximum of $192.  The requested punitive damages amount to more than 450 times that number, an unacceptable ratio.  See Gore, 517 U.S. at 580 ("[E]xemplary damages must bear a 'reasonable relationship' to compensatory damages . . . .").

In sum, Judge Holwell did not find, and the A&C Defendants have not shown, that POP sought the seizure of A&C's PC Pills in bad faith.  Even if the A&C Defendants were able to make that showing, they have not shown that POP's conduct was reprehensible, and the damages they have established are de minimis.  In these circumstances, the A&C Defendants' request for punitive damages should be denied.

D.   Interest

The Lanham Act authorizes a court to award a victim of wrongful seizure prejudgment interest from the date its complaint is filed at the "annual interest rate established under section 6621(a)(2) of Title 26."  15 U.S.C. § 1117(b)(2).  Accordingly, the A&C Defendants are entitled to an award of prejudgment interest at a rate equal to the sum of the "Federal short-term rate" determined by the Secretary of the Treasury, plus three percentage points, 26 U.S.C. § 6621(a)(2)(A)-(B), (b), from April 20, 2007, when their Counterclaim was filed, through the date judgment is entered.

VI.   <u>Conclusion</u>

       For the foregoing reasons, I recommend that the A&C Defendants be awarded $22,535, consisting of $192 for products seized but not returned, and attorneys' fees in the amount of $22,343.  In addition, the A&C Defendants are entitled to prejudgment interest, pursuant to 26 U.S.C. § 6621(a)(2), from the date their Counterclaim was filed at a rate equal to the Federal short-term rate determined by the Secretary of the Treasury plus three percentage points.

VI.   <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

       The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within fourteen days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Loretta A. Preska, Chief United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Chief Judge Preska.  Any failure to file timely objections will result in a waiver of those

objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Dated:        New York, New York
              February 27, 2014

                                                                 FRANK MAAS
                              United States Magistrate Judge

Copies via ECF to All Counsel

24